FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 20, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TIFFANY C. O/B/O LCC, A MINOR CHILD,<br><br>　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　Defendant. | No. 1:19-CV-03263-SAB<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Before the Court are the parties' Cross-Motions for Summary Judgment, ECF Nos. 11 and 12. The motions were heard without oral argument. Plaintiff is represented by D. James Tree. Defendant is represented by Lars Nelson and Timothy Durkin. For the reasons set forth below, the Court grants Defendant's motion for summary judgment and denies Plaintiff's motion for summary judgment.

## BACKGROUND

On June 29, 2016, Plaintiff filed an application for S.S.I. on behalf of her minor child, LCC, with an alleged disability onset date of March 30, 2016. Plaintiff initially listed the minor child's disabilities as attention deficit hyperactivity disorder (ADHD) and oppositional defiance disorder. Subsequent appeal documents state the child also suffers from anxiety as well, which causes diarrhea

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 1

and headaches. Plaintiff's claim was denied initially on December 8, 2016 and upon reconsideration on March 20, 2017. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ).

Plaintiff appeared before an ALJ on July 30, 2017, in Yakima Washington. Plaintiff and LCC testified, as well as a State appointed psychological expert, Dr. Rozenfeld. On September 24, 2018, the ALJ issued a decision finding LCC was not disabled. AR 18. The Appeals Council declined to review the ALJ's decision on September 11, 2019. AR 1

Plaintiff filed a timely appeal to the United States District Court for the Eastern District of Washington on November 7, 2019. ECF No. 1. This matter is before this Court under 42 U.S.C. § 1383(c)(3).

## SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a child under the age of eighteen must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The Social Security Administration has enacted a three-step analysis to determine whether a child is eligible for SSI benefits because of a disability. 20 C.F.R. § 416.924(a). First, the ALJ considers whether the child is engaged in "substantial gainful activity." *Id*., at § 416.924(b). Second, the ALJ considers whether the child has a "medically determinable impairment that is severe," which is defined as an impairment that causes "more than minimal functional limitations." *Id*. at § 416.924(c). Third, if the ALJ finds a severe impairment, he or she must then consider whether the impairment "medically equals" or "functionally equals" a disability listed in the regulatory "Listing of Impairments." *Id.* at § 416.924(c)(d). At this step, if the impairment does not meet the duration requirement (a continuous period not less

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 2

than twelve months), or does not meet or medically equal, or functionally equal any of the listing impairments, then the child is not disabled. *Id.*

To meet or medically equal a listing, the child's severe impairment has to meet or medically equal the severity of a set of criteria for an impairment in the listings. *Id.* Even if an impairment does not meet or medically equal a listing, the claimant may be disabled if his or her impairment is functionally equivalent to a listed impairment. *Id.* Functional equivalence is measured by assessing the claimant's abilities in six functional domains, which are "broad areas of functioning intended to capture all of what a child can or cannot do." *Id.* The functional Domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself, and (6) his/her general health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i-vi). An impairment is functionally equivalent to a listed impairment if it results in extreme limitations in one functional Domain or marked limitations in two functional Domains. 20 C.F.R. § 416.926a(d). An "extreme limitation" is defined as a limitation that "interferes very seriously with [a person's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3). An impairment is a "marked limitation" if it "seriously interferes with [a person's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2).

In making this assessment, the ALJ must compare how appropriately, effectively, and independently the child preforms activities compared to the performance of children of the same age who do not have impairments. 20 C.F.R. § 416.926a(d).

## STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. Therefore, only the most relevant facts are summarized here.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 3

At the time of the hearing in 2018, the child, LCC, was ten years old and had just completed the fourth grade. LCC lives with his mother and siblings in Yakima, Washington. LCC suffers from attention-deficit and hyperactivity disorder (ADHD), unspecified anxiety disorder, and oppositional defiance disorder (ODD). In 2016, LCC's second grade teacher described his as very happy, full of energy and a great student. AR 278. In 2017, his third-grade teacher described him as bright, above grade level in many academic areas, and a great student when he is on his medication. AR 226-232.

LCC started counseling in 2016 to deal with his hyperactivity, noncompliance, and physical aggressions at both home and school. LCC was also prescribed Ritalin to help with his ADHD symptoms. The medication helped LCC manage his symptoms, and he reported doing better at home and in school. AR 298. He told his doctor in May 2016 that his medication was helping, and he was calmer and getting more work done. *Id.* Plaintiff stated she has been working with LCC's doctor to find the right dosage. They added a dose in the afternoon, which worked well. When LCC was "goofing off" at soccer practice, Plaintiff gave him an extra dose before practice, which also worked well.

In 2017, LCC reported increased anxiety and reported having headaches and stomachaches because of his anxiety. He was given anxiety medication and was participating in counseling and both of these helped him to manage his anxiety, as well as reduced the frequency of the headaches and stomachaches. LCC told his doctor in September 2017 that his headaches had reduced to "one tiny one about once a week." AR 394. However, LCC did have some behavioral problems in both February and November of 2017, as well as 2 disciplinary reports in school during 2018.

LCC also struggles with weight issues, which he struggled with before starting his medication. He has measured in the first and third percentile in weight. Appetite loss is a side-effect of the Ritalin, which adds to LCC's weight issues.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 4

Because of this, Plaintiff tries to work LCC's medication schedule around breakfast and lunch, and she limits the amount of medication LCC takes in the summer. Also, LCC takes a nutritional supplement, Pediasure, to gain weight, which has helped him maintain his weight.

## THE ALJ'S FINDINGS

**At step one**, the ALJ found LLC had not engaged in "substantial gainful activity" since the application date of June 29, 2016. AR 18.

**At step two**, the ALJ found LLC had the following severe impairments: ADHD; unspecified anxiety disorder; oppositional defiance disorder. AR 18.

**At step three**, the ALJ found LLC's impairments, alone or in combination, did not meet or medically equal one of the listed impairments. The ALJ paid special attention to listings 112.06 for anxiety and obsessive-compulsive disorders, 112.08 for personality and impulse control disorders, and 112.11 for neurodevelopmental disorders. AR 18.

For the functional equivalence analysis, the ALJ concluded LCC's impairments, alone or in combination, did not functionally equal the severity of the listings. He found: (1) in Domain one for acquiring and using information LCC had no limitation, (2) in Domain two for attending and completing tasks LCC had a less than marked limitation, (3) in Domain three for interacting and relating with others LCC had a less than marked limitation, (4) in Domain four for moving about and manipulating objects LCC had no limitation, (5) in Domain five for caring for yourself LCC had a less than marked limitation, and (6) in Domain six for health and physical well-being LCC had a less than marked limitation. The ALJ concluded LLC was not disabled within the meaning of the Social Securities Act. AR 26-31.

## STANDARD OF REVIEW

The ALJ's determination is reviewed *de novo*, but deference is owed to any reasonable construction of applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084,

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 5

1087 (9th Cir. 2000). The ALJ resolves any conflicts in the medical testimony and resolves any ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's decision will only be reversed if it is based on legal error, or it is not supported by substantial evidence in the record. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is "more than a scintilla," but less than a preponderance. *Andrews,* 53 F.3d at 1039. In other words, it is relevant evidence "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence supports more than one rationale interpretation, the Court must uphold the ALJ's determination should one of those interpretations support the ALJ's decision. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

A decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighting the evidence or making the determination. *Brawner v. Sec'y of Health & Human Servs.,* 839 F.2d 432, 433 (9th Cir. 1988). The ALJ's decision will be upheld if its decision is based on an inconsequential error, so long as the errors are immaterial to the ultimate assessment of disability. *Stout v. Comm'r, Soc. Sec. Admin.,* 454 F.3d 1050, 1055 (9th Cir. 2006).

**ISSUES FOR REVIEW**

(1) Whether the ALJ properly assessed the opinion evidence at Step Three.

(2) Whether the ALJ properly assessed the listings or functional Domains.

**DISCUSSION**

**(1) The ALJ Properly Assessed the Opinion Evidence.**

Plaintiff argues the ALJ failed to properly assess the opinion evidence in this case. First, the ALJ failed to properly assess the opinion evidence of LCC's treating physician, Dr. Worley. Second, the ALJ erred because it did not properly consider Plaintiff's favorable lay testimony.

**A. The ALJ's Assessment of the Treating Physician**

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 6**

When assessing the evidence, the ALJ cannot reject the treating doctor's opinions unless it is contradicted by another doctor, and the ALJ must provide "specific, clear, and convincing evidence" for why it rejects the treating physicians opinions. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). An ALJ errs when he or she rejects a medical opinion "while doing nothing more than ignoring it [or] asserting without explanation that another medical opinion is more persuasive." *Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014). The ALJ's rejection of treating physician can be supported by substantial evidence where it is consistent with other experts' written reports and the claimant's own testimony. *See Andrews,* 53 F.3d at 1043.

Here, the ALJ rejected Dr. Worley's assessment of LCC in Domains three and five. Dr. Worley evaluated LCC as marked in these Domains while the ALJ found LCC to be less than marked in these Domains. Plaintiff contends the ALJ failed to provide adequate reasons for rejecting Dr. Worley's assessment of Plaintiff in Domains three and five.

The ALJ noted Dr. Worley's opinions for these Domains were contradicted by four other doctors, one of whom was subject to cross-examination, Dr. Rozenfeld. The three doctors not subject to cross-examination were the non-examining State agency medical and psychological consultant, Drs. Beaty and Wolfe, who reviewed the record initially, and a State agency psychological consultant, Dr. Postrovoit, who reviewed the record upon reconsideration. These four doctors all had similar, yet slightly differing opinions on LCC's levels in the Domains. However, they all agreed LCC was, at most, less than marked in any of the six categories. The ALJ relied on this in rejecting Dr. Worley's opinions. AR 23-25. Additionally, the ALJ noted the child's unremarkable mental examination, as well as the treatment notes describing the child as being calm, cooperative, and able to engage, all showed the child's disabilities were inconsistent with the alleged behavioral and mental issues.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 7

The ALJ gave great weight to Dr. Rozenfeld, a psychological medical expert who testified at the hearing. Plaintiff argues this was an error because Dr. Worley deserved controlling weight as the treating physician. As an expert, the ALJ noted that Dr. Rozenfeld understands the Social Security disabilities program and gave a thorough explanation of her opinions. AR 23-24. Dr. Rozenfeld testified she did not disagree with Dr. Worley's analysis of the child but did disagree with Dr. Worley's ratings for the Domain five. AR 69-70. This is because when LCC is off his medication, even though his impairments increase, these increases do not last long enough under the requirements for LCC to be at a marked level.

The ALJ's assessment of Dr. Worley's opinion is supported by substantial evidence in the record. Accordingly, the Court finds no error.

**B. The ALJ's assessment of Plaintiff's Testimony.**

When discounting lay testimony, the ALJ must give germane reasons for why he chose to discount it. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). The ALJ cannot reject a lay person's subjective complaints solely based on lack of objective medical evidence to corroborate the alleged symptoms. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). However, "objective medical evidence is still a relevant factor in determining the severity of the claimant's pain and disabling effects." *Id*. at 857. Plaintiff asserts the ALJ erred by failing to properly consider her lay testimony.

The ALJ gave only partial weight to Plaintiff's statements because he did not find them persuasive "for the same reasons set forth above, in finding the allegations are not entirely consistent with the objective findings or the claimant's good response to treatment." (Tr. 25). These reasons include the opinions of four doctors, statements from LCC's teacher, as well as objective findings in the record. The ALJ's assessment of Plaintiff's testimony is supported by substantial evidence in the record. Therefore, the Court finds no error.

//

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 8

### (2) The ALJ Properly Assessed the Listings.

At Step Three of a child disability assessment, the ALJ must determine if the child's severe impairment meets, medically equals, or functionally equals the listings. 20 C.F.R. § 416.924. To meet or medically equal a listing, the child must meet or medically equal the severity of a set of criteria for an impairment in the listings. *Id.*

A claimant must present symptoms, signs or laboratory findings "at least equal in severity and duration" to the listed impairment." 20 C.F.R §§404.1525(c)(3), 416.925(c)(3). To qualify for benefits by showing a combination or impairments is equivalent to a listed impairment, the claimant "must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (emphasis in original). Plaintiff alleges the ALJ erred in failing to assess LCC under either Listing 105.08 or Listing 111.02B.

### (A) Listing 105.08: Growth Failure Due to Any Digestive Disorder

To medically meet a Listing 105.08 impairment, the child must have: (1) a chronic nutritional deficiency present on at least two evaluations at least 60 days apart within a consecutive 12-month period, which is documented by either anemia or serum albumin deficiency; and (2) a growth failure demonstrated by BMI readings within a consecutive 12-month period, at least 60 days apart, that are less than the third percentile on Table III or Table IV. The ALJ did not specifically mention Listing 105.08 in his decision, which Plaintiff asserts was a harmful error.

LCC did not meet the criteria for this requirement. There is no evidence in the record showing LCC suffers from either anemia or a deficiency in his serum album levels, which is a requirement. Also, his three BMI measurements did not read at less than the third percentile in a consecutive twelve-month period, at least sixty days apart. Plaintiff does not provide or point to any evidence of a functional limitation from LCC's weight that would have impacted the ALJ's overall

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 9**

disability analysis. Thus, Plaintiff has not presented any evidence that would impact the ALJ's ultimate determination of disability. Even if the ALJ should have assessed LCC under Listing 105.08, LCC does not meet or medically equal the requirements of this listing, making this error harmless. As such, this would not have changed the ALJ's overall assessment of disability and is inconsequential. Therefore, the Court finds no reversible error.

### (B) Listing 111.02B: Dyscognitive or Absence Seizures

Epilepsy is defined as a "pattern of recurrent and unprovoked seizures that are manifestations of abnormal electric activity in the brain." 20 CFR, Subpart P, Appendix 1 Part B2. Plaintiff asserts the ALJ should have assessed LCC's tension-level headaches as dyscognitive seizures or absence seizures under Listing 111.02B. Dyscognitive seizures are "characterized by alteration of consciousness without convulsions or loss of muscle control." *Id.* Absence seizures are similar, but are shorter than dyscognitive seizures, normally lasting for a few seconds rather than minutes. *Id.* The regulation requires at least one detailed description of the seizures from someone who has witnessed one, preferably a medical professional. *Id.* To meet this listing the child must have either dyscognitive or absence seizures at least once a week for at least three consecutive months despite adherence to treatment. *Id.* The regulation also states if the child has a co-occurring neurological disorder, the SSA will evaluate the child's mental impairment under Listing 112 for mental disorders body system. *Id*

Plaintiff relies on SSR 19-4p to support his argument that the ALJ should have considered the Epilepsy Listing, 111.02B, in considering LCC's headaches. SSR 19-4p is used for evaluating cases involving Primary Headache Disorder. It states headaches are "neurological disorder involving reoccurring pain in the head, scalp or neck." *Soc. Sec. Ruling, SSR 19-4p; Titles II & Xvi: Evaluating Cases Involving Primary Headache Disorders*, SSR 19-4P (S.S.A. Aug. 26, 2019). Primary headaches occur independently and are not caused by another medical

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 10

condition, while secondary headaches are caused by another, underlying medical condition. *Id.* SSR 19-4p lists tension -type headaches as a type of primary headache. Only primary headaches can be considered medically determinable impairments, not secondary headaches. *Id.* This is because secondary headaches are symptoms of another, underlying medical condition and successful treatment of the underlying condition will generally alleviate the secondary headache.

Tension-type headaches cause pain or discomfort in one's head, scalp, neck, face, or jaw and are normally associated with tightness in the affected areas. *Id.* The regulation further breaks down tension-type headaches into episodic or chronic. Episodic tension-type headaches can be either infrequent, which typically do not require medical attention, or frequent that normally does require medical attention. *Id.* Chronic tension-type headaches usually evolve from episodic ones. *Id.* Plaintiff argues the ALJ erred by failing to assess LCC's tension-level headaches under the listing for epilepsy, 111.02B.

The ALJ noted LCC's headaches were caused by his anxiety and "the claimant reported that his medication was helping his anxiety and he was not having as many headaches…" AR 31. Even if the ALJ erred in failing to assess LCC under 11.02B it was harmless because LCC's headaches are not primary headaches because they are caused by his anxiety. SSR 19-4p states secondary headaches are not assessed under this listing since they are normally alleviated by treatment for the underlying condition. *Id.* LCC's headaches were helped by his anxiety treatment, which the ALJ noted. Accordingly, this Court finds no reversible error.

**(3) The ALJ Properly Assessed the Functional Domains.**

If the ALJ determines the child does not meet or medically equal a listing, it must determine if the child functionally equals a listed impairment. An impairment is functionally equivalent to a listed impairment if it results in extreme limitations in one of the six functional Domain or marked limitations in two of the six

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 11

functional Domains. 20 C.F.R. § 416.926a(d). The functional Domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself, and (6) his/her general health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i-vi).

An "extreme limitation" is defined as a limitation that "interferes very seriously with [a child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3). An impairment is a "marked limitation" if it "seriously interferes with [a child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2). When looking into the functional domains of the child, the ALJ must assess the child within his or her age category in the context of other children in the same age range. 20 C.F.R. § 416.926a(d). This assessment is meant to evaluate the "whole child" and how he or she functions in all settings in order to determine how the child is limited. *Title Xvi: Determining Childhood Disability Under the Functional Equivalence Rule-the "Whole Child" Approach*, SSR 09-1P (S.S.A. Feb. 17, 2009).

The ALJ found LCC had no limitation in Domains one and four. The ALJ found LCC had a less than marked limitation in Domains two, three, five, and six. Plaintiff asserts the ALJ erred in finding LCC had a less than marked limitation in Domains three, five and six.

**(A) Domain Three: Interacting and Relating with Others.**

Domain three looks at the child's abilities in interacting and relating with others. In this evaluation, the Social Security regulations provide examples of the how school-age children (children age six to age twelve) should be developing in this category. Dr. Worley assessed LCC as having a marked limitation in this domain. Plaintiff argues the ALJ's rejection of the treating physician's assessment in this domain was an error, and the record did not support the ALJ's findings.

//

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 12

The ALJ determined LCC was less than marked in this Domain because even though LCC did exhibit some aggressive behaviors, LCC endorsed less physical interactions, used self-talk and breathing exercises to relax and avoid any escalations in anger after he was placed on his medication. Further, the school records show only two disciplinary reports against LCC in 2018, which is a reduction from the previous year.

Dr. Rozenfeld noted in her testimony some of these aggressive behaviors can be explained by some instability in LCC's home environment and seemed to resolve themselves. AR 60. Also, the medical record shows that when medicated LCC was calm, corporative, made fair eye contact, and was able to engage. The ALJ relied on Dr. Rozenfeld's assessment and rejected Dr. Worley's opinion for this domain. Dr. Rozenfeld's assessment is also support by the assessment of Drs. Beaty, Wolfe and Postrovoit, the state appointed medical and psychological experts. These three other doctors agreed LCC was less than marked in this domain. The ALJ's assessment of LCC's limitation in Domain three is supported by substantial evidence in the record. Thus, the ALJ did not err in his assessment of LCC in Domain three.

**(B) Domain Five: Caring for Yourself.**

Domain five looks to how the child cares for his or herself. In assessing school age children, the regulation states the child should be independent in most day to day activities but may still need reminded to do these routinely. The child should also begin to understand the difference between what is right and wrong and should be able to demonstrate consistent control over his or her behavior. 20 C.F.R. § 416.926a. Here, Plaintiff argues the record does not support the ALJ determination that LCC has a less than marked limitation in this Domain; instead the ALJ should have relied on the treating physician's opinion that Plaintiff had a marked limitation in this category.

//

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 13

The ALJ's reliance on Dr. Rosenfeld's opinion, in contrast to Dr. Worley's opinion, is supported by substantial evidence in the record. Dr. Rozenfeld opined he was less than marked in this Domain because any difficulties were during times when his medication wears off, or periods of increase. Dr. Rozenfeld also testified that while LCC struggles with anxiety, he also requested to restart therapy indicating insight into his struggles and these symptoms do not last long enough to meet the duration requirement. Further, the ALJ's assessment and Dr. Rozenfeld's opinion are supported by the State agency medical and psychological consultants who opined LCC had no limitation in this Domain. The ALJ's assessment of LCC in Domain five is therefore supported by substantial evidence. This Court finds no error.

(C) **Domain Six: Health and Well-Being.**

In Domain 6, the ALJ evaluates the child's general health and physical well-being. Evaluations for this Domain look into the "cumulative physical effects of physical and mental impairments." 20 C.F.R. § 416.926a. The ALJ should take in account any "somatic complaints" that relate to the child's impairments, which include headaches, any stomach discomfort, or changes in weight or eating habits. *Id.* Plaintiff asserts the ALJ failed to assess LCC's physical and mental ailments properly when evaluating that LCC was less than marked in this Domain. Plaintiff contends the ALJ did not consider that LCC was still having Listing-level tension headaches, or how underweight LCC became in part because of the side effects from the ADHD medication.

When evaluating LCC's level for Domain six, the ALJ considered that LCC's weight issue was being effectively managed by LCC taking nutritional supplements and he was able to put on weight. Additionally, Plaintiff testified at the hearing they were planning his medication around his mealtimes in an attempt to work around the side effects of the medication. Also, the ALJ noted that LCC taking anxiety medication helped to reduce the stomach aches and headaches he

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 14

was experiencing. The record shows LCC stated his headaches were reduced to "one tiny one about once a week" AR 394. LCC's treating physician evaluated LCC to be a less than marked limitation in this domain, as well as two State appointed physicians, Drs. Beaty and Wolfe.

As such, the ALJ's assessment is supported by substantial evidence in the record. Accordingly, the Court finds no error.

Accordingly, **IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 11, is **DENIED**.

2. Defendant's Motion for Summary Judgment, ECF No. 12, is **GRANTED**.

3. The Decision of the Commissioner is **AFFIRMED**.

4. The District Court Executive is directed to enter judgment in favor of Defendant and against Plaintiff.

**IT IS SO ORDERED**. The District Court Clerk is hereby directed to enter this Order and provide copies to counsel and close the file.

**DATED** this 20th day of July 2020.



Stanley A. Bastian
United States District Judge

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 15